**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kim C Kristoff, | No. CV-24-03395-PHX-DWL |
| Petitioner, | **ORDER** |
| v. | |
| Ryan Thornell, et al., | |
| Respondents. | |

This is a habeas corpus action under 28 U.S.C. § 2254 with an unusual procedural posture. Following a 14-day jury trial in Maricopa County Superior Court in 2020, Petitioner was convicted of various counts of public sexual indecency, sexual conduct with a minor, and child molestation and sentenced to 39 years in prison. The victims were Petitioner's daughters, Kaci and Mary, and the underlying offenses occurred in the 1990s when Mary was about eight years old and Kaci was about three or four years old. The key piece of evidence was a recording of a phone call that Kaci placed to Petitioner in 2017, during which he made various incriminating admissions.

In November 2024, Petitioner initiated this action by filing his habeas petition. (Doc. 1.) The next potentially significant development occurred in August 2025, when the Ninth Circuit, in *Bieganski v. Shinn*, 149 F.4th 1055 (9th Cir. 2025), concluded that the version of Arizona's child molestation statute in effect between 1993 and 2017 was unconstitutional because it did not require the state to prove, as an element of the offense, that the defendant acted with sexual motivation and instead characterized the absence of

sexual motivation as an affirmative defense that the defendant had the burden of asserting and proving. In September 2025, based in part of the issuance of *Bieganski*, Petitioner filed a successive petition for post-conviction relief ("PCR") in Arizona state court and a motion to "stay and abey" this action under *Rhines v. Weber*, 544 U.S. 269 (2005), pending the resolution of his just-filed successive PCR petition. (Docs. 17, 17-1.)

In February 2026, Magistrate Judge Boyle issued a thorough 21-page report and recommendation ("R&R") concluding that the motion for a *Rhines* stay and the claims in the habeas petition should be denied. (Doc. 20.) Afterward, Petitioner filed objections to the R&R (Doc. 23) and also filed a motion to amend his habeas petition to add four new claims. (Doc. 34.) "These Grounds are based on the Ninth Circuit's decision in [*Bieganski*]; the Successive Petition for Post-Conviction Relief filed in Maricopa County Superior Court on September 10, 2025; and the state court's November 24, 2025, Briefing Schedule directing merits briefing on *Bieganski*." (Doc. 35-1 at 2.)

Against this backdrop, the Court rules as follows. First, the Court agrees with the R&R's determination that the motion for a *Rhines* stay must, at least on the current record, be denied. The purpose of a *Rhines* stay is to allow a habeas petitioner who has asserted unexhausted claims in a habeas petition to return to state court to exhaust those claims. But as things currently stand, the claims Petitioner wishes to litigate in state court are not even asserted in his habeas petition. A *Rhines* stay is not warranted in this circumstance.

Second, the Court also agrees with the R&R's determination that Petitioner is not entitled to relief based on any of the five claims asserted in the current version of his habeas petition.

Third, although the acceptance of the R&R's recommendations on these two points would ordinarily result in the entry of judgment, the Court declines to enter judgment at this time due to the presence of Petitioner's pending, and not yet fully briefed, motion to amend. The Court will rule on that request in due course after it comes fully briefed and is addressed in a new R&R.

…

**RELEVANT BACKGROUND**

In 2017, Petitioner's adult daughters, Mary and Kaci, informed their mother that Petitioner had engaged in sexual contact with them more than two decades earlier, when Mary was about eight years old and Kaci was about three or four years old. *State v. Kristoff*, 2021 WL 4164036, *1 (Ariz. Ct. App. 2021). "About a week later, Kaci called [Petitioner] and recorded their conversation (the 'Confrontation Call') during which [Petitioner] made incriminating statements." *Id.* More specifically, Petitioner admitted to massaging Mary's vulva on one occasion, to allowing Kaci to touch and play with his penis on multiple occasions, and to having Kaci perform oral sex on him on one occasion. (Doc. 1-1 at 116.) As for the incident involving Mary, Petitioner's exact words were: "[A]ll that I did was massage the vulva and she had panties on . . . and I massaged her vulva and that probably took 15 minutes or something less than 20 minutes and then I left the room and that happened one time." (*Id.* at 864.) As for the incident in which Kaci performed oral sex on him, Petitioner's exact words were: "I never performed oral sex on your or [Mary]—ever—not even one time. This is something that you did or chose to do, and I allowed it and that's my—my mistake. And that's my—that's the I horror I've performed. I didn't stop you. I didn't try to stop you. And that's why I'm in trouble and that's why I should be in trouble." (*Id.* at 863.)

In November 2017, a Maricopa County grand jury returned an eight-count indictment charging Petitioner with two counts of sexual conduct with a minor related to separate incidents involving Mary (Counts One and Two); two counts of child molestation (Counts 3 and 6), one count of public sexual indecency (Count 4), and one count of sexual conduct with a minor (Count 5) related to incidents involving Kaci; and one count of sexual conduct with a minor (Count Seven) and one count of child molestation (Count Eight) related to an incident involving a third child. (Doc. 12-1 at 5-7.)[1]

In February 2020, over the course of 14 trial days (Doc. 12-3 at 2231), the case was

---

[1] The state ultimately failed to prove either of the counts related to the third child. (Doc. 12-1 at 12.)

tried to a jury. "Both Mary and Kaci testified at trial." *Kristoff*, 2021 WL 4164036 at *1 (citations omitted). Additionally, "[m]any emails were admitted where [Petitioner] made admissions regarding sexual abuse of his daughters." (Doc. 20 at 15, citation omitted.) For example, in one email to Kaci, Petitioner stated: "[Y]ou have to accept that my error of aberrant behavior of more than 22 years ago was a unique and ugly part of our lives, not worth one second of your time to reflect over or make any sense of it." (Doc. 1-1 at 117.) In another email to Kaci and Mary, Petitioner stated: "For all of these many years I was caught in my own private hell not wanting to hurt you further in any way by bring up the subject that, well, possibly you did not recall. . . . I prayed that you did not recall. There is nothing but ugliness there. . . . I am not a child predator and while the events of 22 or so years ago are reprehensible and aberrant behavior that is not rational or explainable, it is not the result of predatory behavior but rather my own selfish stupidity." (*Id.* at 117-18.)

Petitioner also "testified on his own behalf" at trial and "denied each of the sexual acts described by Kaci and testified the story he told her in the Confrontation Call was a lie. He . . . claimed he made up the stories to keep his daughter on the phone because he was afraid if he did not apologize, his children would never talk to him again." *Kristoff*, 2021 WL 4164036 at *1. Nevertheless, "[t]he jury convicted [Petitioner] of Counts 3, 4, 5, and 6, as well as the lesser-included offense—child molestation—for Count 1. The superior court sentenced [Petitioner] to 39 years in prison." *Id.*

In November 2024, after the Arizona courts denied his direct appeal and his petition for post-conviction relief ("PCR"), Petitioner filed his § 2254 petition. (Doc. 1.) As noted in a prior order, the petition "raises five grounds for relief. In Ground One, Petitioner contends his trial counsel violated his Fourteenth Amendment right to due process and his Sixth Amendment right to the effective assistance of counsel by failing to retain, consult, and present an expert witness on false confessions and confrontation calls. In Ground Two, he claims the trial court violated his Fifth and Fourteenth Amendment right to a fair trial by failing to instruct the jury that, pursuant to Arizona Revised Statutes section 13-1407(E), lack of sexual interest motivation is an affirmative defense to child molestation. In

Grounds Three through Five, Petitioner asserts that the PCR court, in post-conviction proceedings, violated his Sixth and Fourteenth Amendment right to the effective assistance of counsel by failing to grant relief on his claims that his trial counsel was deficient in failing to request a jury instruction for Contributing to the Delinquency of a Minor, the lesser-included instruction for Molestation of a Child (Ground Three); eliciting and failing to object to inadmissible testimony from the State's expert witness that false allegations were uncommon (Ground Four); and failing to investigate and present Marty Oyler and Chelsea Stires as defense witnesses to rebut some of the victims' allegations (Ground Five)." (Doc. 5 at 1-2.)

On April 14, 2025, Respondents filed their answer to the habeas petition. (Doc. 12.)

On August 12, 2025, the Ninth Circuit decided *Bieganski*.

On September 10, 2025, Petitioner filed a successive PCR petition in Maricopa County Superior Court. (Doc. 17-1.) The successive PCR petition raises five claims: (1) Petitioner's "child molestation convictions are invalid as a matter of law" because the prosecution failed to present evidence of sexual motivation; (2) Petitioner received ineffective assistance of counsel ("IAC") during his direct appeal, because his counsel "failed to federalize the legal sufficiency claim she raised," and during his first PCR proceeding, because his counsel failed to assert an IAC claim against his trial counsel premised on the failure to consult with a mental health behavioral expert; (3) Petitioner received IAC at trial, because his counsel failed to investigate and present mental health disorder evidence as character evidence and in mitigation; (4) Petitioner received IAC at trial, because his counsel failed to request a theory-of-the-case instruction; and (5) Petitioner was denied the right to present a complete defense. (*Id.* at 4.)

On September 12, 2025, in lieu of filing a reply in support of his habeas petition, Petitioner filed a "motion to stay and abey." (Doc. 17.) Petitioner "requests the petition for writ of habeas corpus be held in abeyance pending final resolution of all proceedings related to the successive PCR, including any petitions for review." (*Id.* at 9.) Petitioner cites the Ninth Circuit's decision in *Bieganski* as one of the grounds for this request. (*Id.*

at 5-6 ["The Ninth Circuit recently concluded Arizona's child molestation statute was unconstitutional . . . . [Petitioner] was prosecuted under the operative statutes at issue in *Bieganski* and he is raising the legal insufficiency claim as a Rule 32.1(h) claim in the successive PCR."]; *id.* at 8 ["[Petitioner] was not dilatory in returning to state courts. . . . A case bearing on the legal insufficiency argument that trial counsel preserved during trial proceedings was pending in the Ninth Circuit and resolved with a decision on August 12, 2025."].)

That same day, Respondents filed an opposition to the motion for a *Rhines* stay. (Doc. 18.)  In a nutshell, Respondents argue that a *Rhines* stay is only available when a petition contains unexhausted claims, yet all five of the claims asserted in Petitioner's operative habeas petition are, by Petitioner's own admission, exhausted.  (*Id.*)

On September 19, 2025, Petitioner filed a reply in support of his request for a *Rhines* stay.  (Doc. 19.)  Near the end of his reply, Petitioner made a passing request, in the alternative, for leave to amend his petition.  (*Id.* at 4 ["In the event this Court concludes a stay and abey order is not appropriate and this matter will proceed notwithstanding concurrent—and potentially dispositive—proceedings in state courts, [Petitioner] requests leave of court to amend the petition pursuant to 28 U.S.C. § 2242 and Rule 15(a)(2) of the Federal Rules of Civil Procedure."].)  However, Petitioner did not provide a copy of his proposed amended pleading as an attachment.

On February 6, 2026, the R&R issued.  (Doc. 20.)

On March 20, 2026, Petitioner filed objections to the R&R.  (Doc. 23.)

On May 4, 2026, Respondents filed a response to Petitioner's objections.  (Doc. 27.)

On May 12, 2026, Petitioner filed a reply in support of his objections.  (Doc. 33.)  That same day, Petitioner filed a motion to amend his habeas petition to add four new claims.  (Doc. 34.)

On July 9, 2026, Respondents filed a response to the motion to amend.  (Doc. 39.)

The deadline for Petitioner to file a reply in support of his motion to amend has not yet expired.

**ANALYSIS**

I.      Motion For *Rhines* Stay

The first matter before the Court that is ripe for resolution is Petitioner's motion for a *Rhines* stay. (Doc. 17.) The R&R concludes this motion should be denied because "the claims that Petitioner is attempting to exhaust in the Arizona courts are not raised in his habeas petition." (Doc. 20 at 3-6.) In his objections, Petitioner does not (at least in the Court's view) meaningfully confront the R&R's legal analysis or the authorities cited therein—instead, he offers arguments as to why his request for leave to amend should be granted. (Doc. 23 at 2-7.)

Petitioner's objections implicate 28 U.S.C. § 636(b)(1), which provides that when, as here, a magistrate judge has issued an R&R regarding a dispositive matter[2] and a party has thereafter filed timely written objections, "[a] judge of the court shall make a de novo determination of those portions of the [R&R] or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). *See also* Fed. R. Civ. P. 72(b)(2)-(3). As the Ninth Circuit has explained, "[i]n providing for a de novo determination . . . Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations. . . . [D]istrict courts conduct proper de novo review where they state they have done so, even if the order fails to specifically address a party's objections." *United States v. Ramos*, 65 F.4th 427, 433 (9th Cir. 2023) (cleaned up). *See also id.* at 434 ("[T]he district court ha[s]

---

2      The Ninth Circuit has held that "a motion to stay and abey section 2254 proceedings is generally (but not always) dispositive of the unexhausted claims" and that when such a motion is dispositive, a "magistrate judge . . . ha[s] no authority to hear and determine the motion" and instead must "submit a report and recommendation to the district court on that matter, for de novo review." *Mitchell v. Valenzuela*, 791 F.3d 1166, 1171-74 (9th Cir. 2015). It is unnecessary to decide whether, under the unusual circumstances of this case, the pending motion for a *Rhines* motion is truly dispositive because Judge Boyle wisely treated it as such and thus issued an R&R instead of resolving the motion on the merits.

no obligation to provide individualized analysis of each objection.").

Additionally, district courts are not required to review any portion of an R&R to which no specific objection has been made. *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise."). Thus, district judges need not review an objection to an R&R that is general and non-specific. *See, e.g., Warling v. Ryan*, 2013 WL 5276367, *2 (D. Ariz. 2013) ("Because de novo review of an entire R & R would defeat the efficiencies intended by Congress, a general objection 'has the same effect as would a failure to object.'") (citations omitted).

The Court has performed a *de novo* review of the R&R's analysis regarding the motion for a *Rhines* stay and agrees with its analysis and conclusions. Although, under *Ramos*, this certification is alone sufficient to justify the denial of the motion for a *Rhines* stay, the Court wishes to elaborate on its reasoning in an abundance of caution and to provide clarity going forward.

Federal courts generally may not grant a writ of habeas corpus unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement is "grounded in principles of comity," as it gives states "the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Meanwhile, the purpose of a *Rhines* stay is to "allow[] habeas petitioners to exhaust claims in state court that had not previously been presented there, and to do so without dismissing their federal habeas petitions. The *Rhines* procedure allows federal habeas petitioners to exhaust such claims without running afoul of the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996." *Doerr v. Shinn*, 176 F.4th 1117, 1125 (9th Cir. 2026).

As the R&R correctly concludes, it follows from these principles that a prerequisite

to the issuance of a *Rhines* stay is that the movant's habeas petition contains the same unexhausted claim(s) the movant intends to pursue in state court. *See, e.g., Patterson v. Thornell*, 2023 WL 3060963, *3 (D. Ariz. 2023) ("Patterson's petition is not mixed—it contains no unexhausted claims—so *Rhines* is inapplicable and he is not entitled to a stay. While Patterson argues that *Cruz* provides a pathway to exhaust a *Simmons* claim in state court, he did not raise such a claim in his habeas petition. Patterson cites no authority for the proposition that the court can issue a stay under *Rhines* to allow a petitioner to exhaust a claim he has not raised."); *Myers v. Haviland*, 2017 WL 4837479, *4 (N.D. Ohio 2017) ("[T]his court has found that when a petitioner's unexhausted claim is not included in his habeas petition, his petition is not a mixed petition. Consequently, this court has denied motions for stay and abeyance when the petitioner seeks a stay in order to exhaust a new claim that is not raised in his habeas petition.") (citations omitted); *Shackleford v. Brunsman*, 2011 WL 665600, *3 (S.D. Ohio 2011) ("The stay and abey procedure permitted under *Rhines* applies when the court is presented with a mixed habeas petition. It does not apply in the present case because Shackleford's petition only contains exhausted claims and is therefore not a mixed petition. Shackleford's Motion For Stay, moreover, seeks to litigate not only an unexhausted claim but one not raised in his petition. In this circumstance, the stay and abey procedure outlined in *Rhines* does not apply."). Because the current iteration of the habeas petition does not—by Petitioner's own admission—contain any unexhausted claims, it would make no sense to issue a *Rhines* stay on this record.

With that said, the Court acknowledges that Petitioner has filed a motion to amend his habeas petition to add the unexhausted claims he is concurrently pursuing in state court (via his successive PCR petition). Under the unusual procedural posture of this case, the most logical and efficient course of action is to deny the pending motion for a *Rhines* stay for the reasons stated above, without prejudice to Petitioner's ability to file another motion for a *Rhines* stay should his amendment request be granted.[3]

---

[3] To be clear, the Court takes no position at this time on the merits of the amendment request or on the merits of a hypothetical new motion for a *Rhines* stay filed following the

II.      The Five Claims In The Habeas Petition

As noted, the current iteration of the habeas petition contains five claims. (Docs. 1, 5.) The R&R concludes that all five claims should be denied or dismissed with prejudice. (Doc. 20 at 6-20.) In his objections, Petitioner disagrees with the R&R's analysis as to Claims One, Two, Three, and Four. (Doc. 23 at 7-19.) In contrast, Petitioner does not dispute the R&R's analysis regarding Claim Five and agrees to "withdraw[] Ground 5 from the habeas petition at this time." (*Id.* at 2.) The Court will therefore confine its analysis to the first four claims.

The Court has performed a *de novo* review of the R&R's analysis regarding Claims One, Two, Three and Four and agrees with its conclusions. Although, under *Ramos*, this certification is alone sufficient to justify the dismissal of Counts One, Two, Three, and Four, the Court wishes to elaborate on its reasoning as to a few points.

A.      **Count One**

Count One is an IAC claim premised on "trial counsel's failure to retain, consult, and present an expert witness on false confessions and 'confrontation calls.'" (Doc. 1 at 10-11.)

The Court agrees with the R&R's determination that "[i]t was not unreasonable for the Arizona courts to conclude counsel's performance was not deficient" where counsel attempted to retain a false confessions expert, only for that expert to inform counsel that she could not provide opinions that would be helpful to the defense because most of the "research on false confessions relates to police interrogation" yet Petitioner made his confessions during a secretly recorded phone call with his daughter. (Doc. 20 at 8.) Although Petitioner faults counsel for not then attempting to locate and retain a different expert who possessed expertise "on false confessions resulting from interpersonal family dynamics" (Doc. 23 at 9), Petitioner fails to cite any case holding or even suggesting that the failure to do so amounted to constitutionally deficient performance. This omission is particularly significant because "[w]hen the claim at issue is one for ineffective assistance

hypothetical grant of the amendment request.

- 10 -

of counsel, . . . AEDPA review is doubly deferential . . . .  In such circumstances, federal courts are to afford both the state court and the defense attorney the benefit of the doubt." *Woods v. Etherton*, 578 U.S. 113, 117 (2016) (cleaned up).

Although the analysis could end there, the R&R separately concludes that it was not unreasonable for the state court to find that Petitioner failed to establish prejudice in relation to Count One.  (Doc. 20 at 9-11.)  The R&R elaborates: "The State presented compelling evidence distinct from statements made by Petitioner during the confrontation calls.  Both Mary and Kaci testified at trial that Petitioner abused them.  Petitioner also sent email messages before and after the confrontation calls at issue.  Petitioner denied any unlawful physical contact with the victims and testified that he would have said anything to reconnect with his family.  Petitioner's counsel argued his defense to the jury.  As such, it was not unreasonable for the court to conclude the jury sufficiently understood the evidence so that any limited expert testimony on the subject would not have changed the outcome when compared to the testimony of the victims and substantial evidence presented to the jury." (*Id.* at 11.)  In his objections to the R&R, Petitioner does not meaningfully address this analysis—he simply asserts that "[e]vidence from an expert witness on interrogation and confessions would have supported [his] false confession defense." (Doc. 23 at 9.)  Under these circumstances, Petitioner has arguably forfeited any objection to the R&R's analysis regarding the prejudice prong, *Warling*, 2013 WL 5276367 at *2, and at any rate the Court agrees with the R&R's analysis on this point.

B.     **Count Two**

Count Two is a claim that the trial court violated Petitioner's Fifth and Fourteenth Amendment rights "by failing to instruct the jury that . . . lack of sexual interest motivation is an affirmative defense to child molestation, Counts 1, 3, 5, and 6." (Doc. 1 at 12.)

At first blush, it seems problematic that the trial court failed to provide an instruction on this topic.  In *Bieganski*, the trial court provided the instruction that Petitioner claims he should have received here—that is, an instruction that a lack of sexual motivation is an affirmative defense to the crime of child molestation.  *Bieganski*, 149 F.4th at 1066.  The

Ninth Circuit held that the resulting convictions were unconstitutional because "Arizona has shifted the burden of proof from the state to the defendant to prove a core element of child molestation—that the defendant touched the child's private parts with some kind of sexual interest." *Id.* at 1081.  Here, unlike in *Bieganski*, the jury instructions regarding the crime of child molestation did not even mention the concept of sexual motivation—they did not identify sexual motivation as an element of the crime of child molestation that the prosecution had the burden of proving *or* state that the absence of sexual motivation was an affirmative defense that Petitioner had the burden of proving.  (Doc. 12-3 at 2077-78 ["The crime of molestation of a child requires proof of the following: No. 1. The defendant intentionally or knowingly engaged in or caused a person to engage in any direct or indirect touching, fondling or manipulation of any part of the genitals or anus by any part of the body or by any object, or caused a person to engage in such contact with the child; and No. 2. The child was under 15 years of age."]; *id.* at 2078 ["Intentionally or with the intent to as used in these instructions means that a defendant's objective is to cause that result or to engage in that conduct."].)[4]

Nevertheless, this case differs from *Bieganski* in that the defendant there freely "admitted at trial that he washed the girls' genitals with his bare hand during the Sunday baths." *Bieganski*, 149 F.4th at 1065.  Thus, liability turned on the question of sexual motivation (or lack thereof). *Id.* at 1065-66.  Here, in contrast, "Petitioner testified and denied all sexual contact with his children.  Petitioner's trial counsel likewise argued the defense of actual innocence, and asserted that Petitioner never had any sexual or physical contact with the victims." (Doc. 20 at 13.)  Moreover, although Petitioner included, "in his initial proposed jury instructions," a proposed instruction that identified the "lack of sexual interest motivation [as] an affirmative defense to child molestation," Petitioner did not

---

[4]     With that said, and as Respondents emphasize (Doc. 27 at 15), the jury instructions did state that the definition of "sexual contact"—which was identified as a required element of the crime of public sexual indecency—excludes "direct or indirect touching or manipulating during caretaking responsibilities or  interactions with a minor or vulnerable adult that an objective reasonable person would recognize as normal and reasonable under the circumstances." (Doc. 12-3 at 2078, 2080.)

object when the trial court omitted that proposed instruction from the final instructions, as required under Arizona law, and the Arizona Court of Appeals concluded that this amounted to "a strategic abandonment of the defense at trial." (*Id.* at 19, citation omitted.)

As the R&R notes, the Ninth Circuit encountered a similar situation in *Blythe v. Shinn*, 2022 WL 17984466 (9th Cir. 2022). There, Blythe was convicted in Arizona of three counts of child molestation. *Id.* at *1. "The only sexual contact alleged was that, while clothed, Blythe rubbed his genitals on the victim's genitals and buttocks," and "Blythe's primary defense was that he did not engage in sexual contact with the victim altogether." *Id.* "Blythe did not raise the affirmative defense and contend that he engaged in sexual contact without sexual intent." *Id.* Nevertheless, in his habeas petition, Blythe argued that "the child molestation statute under which he was convicted . . . unconstitutionally shifted the burden of proof to the defendant to disprove the element of sexual intent." *Id.* The Ninth Circuit declined to teach the merits of this argument, holding that any error was harmless given the facts of the case: "Because sexual intent was implicit in the conduct of which Blythe was convicted and because Blythe made no argument negating his sexual intent, an instruction that the prosecution must prove sexual intent beyond a reasonable doubt would not have influenced the jury's verdict. Thus, even if a constitutional violation occurred, it was harmless." *Id.*

Here, too, even assuming that the trial court erred by not providing the affirmative-defense instruction that Petitioner initially proposed (but then, at least under Arizona law, abandoned), any error was harmless. The challenged acts of touching at issue here, like the challenged acts in *Blythe* and unlike the challenged acts in *Bieganski*, were implicitly motivated by sexual intent—Petitioner admitted in the recording to massaging Mary's vulva for 15-20 minutes, to allowing Kaci to touch and play with his penis on multiple occasions, and to having Kaci perform oral sex on him. (Doc. 1-1 at 116.) As Respondents correctly note, '[t]here is no rational explanation or innocent construction of [Petitioner's] actions other than that he was motivated by sexual interest." (Doc. 27 at 15-16.)[5] And as

---

[5] In his reply in support of his objections, Petitioner contends that Respondents' arguments on this point "invert[] the *Brecht* analysis" and "assume[] the very fact at issue."

in *Blythe* and unlike in *Bieganski*, Petitioner and Petitioner's counsel then steadfastly denied throughout trial that the challenged acts ever occurred.  Under these circumstances, "[t]he lack of a jury instruction on sexual intent . . . did not have a 'substantial and injurious effect or influence in determining the jury's verdict.'"  *Blythe*, 2022 WL 17984466 at *1 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

C.    **Count Three**

Count Three is an IAC claim premised on trial counsel's "failing to request a jury instruction for Contributing to the Delinquency of a Minor, the lesser included instruction for Molestation of a Child."  (Doc. 1 at 13.)

The R&R concludes this claim lacks merit.  (Doc. 20 at 13-15.)  First, the R&R notes that the Arizona Supreme Court recently clarified that contributing to the delinquency of a minor is not a lesser-included offense of child molestation under Arizona law.  *State v. Agueda*, 513 P.3d 1112, 1114 (Ariz. 2022) ("The [*State v. Sutton*, 452 P.2d 110 (Ariz. 1969)] court devoted a single sentence to analyze the statutes and concluded contributing to the delinquency of a minor is a lesser included offense of child molesting, since a person who molests a child necessarily performs an act which tends to debase or injure the morals, health or welfare of a child.  A more comprehensive review of these statutes shows that *Sutton*'s analysis is incorrect.") (cleaned up).  Second, the R&R states that "[t]rial counsel's assistance was not ineffective for failure to request a jury instruction on Contributing to the Delinquency of a Minor where the defense reasonably relied on the theory of actual innocence." (Doc. 20 at 15.)

In his objections, Petitioner emphasizes that *Agueda* was not decided until 2022 and contends that the applicable law at the time of his trial in 2020 would have supported a request for the lesser-included offense instruction.  (Doc. 23 at 16.)  The Court finds it unnecessary to resolve this complicated issue because even assuming trial counsel acted

---

(Doc. 33 at 8-9.)  Petitioner's arguments on this issue are unavailing.  Under *Blythe*, it is permissible, as part of the harmlessness analysis, to consider the nature of alleged acts of child molestation and evaluate whether sexual motivation is implicit in such acts.  This is true even if, as here and in *Blythe*, the habeas petitioner disputes whether those acts occurred.

deficiently by failing to request the lesser-included offense instruction as of 2020, the PCR court did not act unreasonably in concluding that any error was harmless. (Doc. 20 at 14, cleaned up [one of the PCR court's grounds for rejecting this claim was "Defendant [has not] shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"].) As the R&R notes, Petitioner made a strategic decision to deny that the challenged acts ever occurred and to pursue a defense of actual innocence. But "[t]o establish *Strickland* prejudice" on an IAC claim premised on trial counsel's failure to request a lesser-included offense instruction, a defendant "must show that there is a reasonable probability that, had the lesser included offense instruction been given, the jury would have convicted only on the lesser included offense. The likelihood of that result must be substantial, not just conceivable." *LaChance v. Dzurenda*, 2023 WL 3615666, *2 (9th Cir. 2023) (quoting *Crace v. Herzog*, 798 F.3d 840 (9th Cir. 2015) (cleaned up). Given the evidence in this case and the type of defense that Petitioner chose to pursue at trial, it is inconceivable—and certainly not substantially likely—that the jury would have only convicted Petitioner of the offense of contributing to the delinquency of a minor, and refused to convict Petitioner of the offense of child molestation, had the lesser-included offense instruction been requested and given.

### D.    **Count Four**

Count Four is an IAC claim alleging that "trial counsel elicited and failed to object to inadmissible testimony from the state's expert witness that false allegations were uncommon." (Doc. 1 at 14.)

As for this claim, the Court finds it sufficient to confirm that it has performed a *de novo* review of the R&R, and also carefully reviewed Petitioner's objections and Respondents' response, and agrees with and adopts the R&R's analysis and conclusions. *Ramos*, 65 F.4th at 433-34.

### III.    Next Steps

Although the Court has now determined that all of Petitioner's claims should be dismissed, it would be premature to enter judgment at this time because Plaintiff's

amendment request remains pending.  The Court will rule on that request in due course after it comes fully briefed and is addressed in a new R&R.  *Cf. Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, 487 F. Supp. 3d 937, 945-46 (S.D. Cal. 2020) ("[I]t is hereby ORDERED that the motion to dismiss is GRANTED, and the complaint is DISMISSED in its entirety.  Plaintiffs make a passing request for leave to amend the complaint at the end of their opposition . . . .  Plaintiffs must file a motion for leave to amend that attaches their proposed amended complaint, along with a redline showing all changes as compared with the original complaint. . . .  The Court will then take the motion under submission without a reply and enter an order in due course."); *Butterline v. Bank of New York*, 2016 WL 1273917, *1 (E.D. Pa. 2016) ("Defendant Bank of New York Mellon Trust Company's Motion to Dismiss is GRANTED.  Plaintiffs' existing claim against the Bank is DISMISSED with prejudice.  Plaintiffs shall have until April 21, 2016, to file a motion for leave to amend to pursue a claim under their alternative theory of liability against the Bank, accompanied by a draft proposed amended complaint.").  *See generally Lopez v. City of Needles, Cal.*, 95 F.3d 20, 22-23 (9th Cir. 1996) (concluding there was no "final decision of the district court" where the district court entered an order dismissing all of the plaintiff's claims, but did not enter judgment, and "proceedings held subsequent to entry of the court's dismissal order show no indication that the plaintiff intended to rest on her complaint without amendment"); *Proud v. United States*, 704 F.2d 1099, 1100 (9th Cir. 1983) (noting that an order "which dismissed the complaint but not the action . . . is not final and appealable unless special circumstances demonstrate that the trial court found plaintiffs could not save the action by any amendment of the complaint they could reasonably be expected to make").

…

…

…

…

…

- 16 -

Accordingly,

**IT IS ORDERED** that:

1.    The R&R (Doc. 20) is **adopted** in relevant part, as discussed above.

2.    Petitioner's objections (Doc. 23) are **overruled**.

3.    Petitioner's motion to stay and abey (Doc. 17) is **denied**.

4.    Petitioner's motion to amend (Doc. 34) **remains pending** and will be resolved in due course after it becomes fully briefed and is addressed in a new R&R.

Dated this 10th day of July, 2026.

Dominic W. Lanza
United States District Judge

- 17 -